UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAMMY CUEVAS,<br><br>    Plaintiff,<br><br>v.<br><br>PEACE OFFICERS RESEARCH ASSOCIATION OF CALIFORNIA LEGAL DEFENSE FUND, et al.,<br><br>    Defendants. | Case No.  14-cv-02540-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT UNDER RULE 52; ISSUING FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER RULE 52; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER RULE 56**<br><br>[Re: ECF 25, 28] |

Plaintiff Sammy Cuevas was fired from his job as an officer with the Campbell Police Department for insubordination, dishonesty, personal relationships with persons engaged in criminal activity, and other misconduct. He appealed his termination to the Campbell City Council and sought Plan benefits for legal representation for that appeal under the terms of Defendant Police Officers Research Association of California Legal Defense Fund ("the Plan" or "the Fund"), an employee benefits plan governed by ERISA.[1] Under the Plan, participants are entitled to legal representation in civil and criminal actions, and administrative disciplinary actions, arising from acts or omissions within the scope of employment. The Plan declined to provide legal representation for Cuevas's appeal to the City Council on the ground that he was terminated for conduct outside the scope of his employment. Cuevas asserts that he was terminated for conduct within the scope of his employment and thus that he was entitled to benefits under the Plan. He seeks recovery of $43,688.35 in attorneys' fees and costs that he paid out of pocket to pursue his appeal to the City Council.

The Plan has filed a motion for judgment pursuant to Federal Rule of Civil Procedure 52

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

and Cuevas has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court set a "Hearing on Dispositive Motions/Bench Trial" for February 18, 2016 and heard extensive oral argument of counsel on that date.[2] For the reasons discussed below, the Court GRANTS the Plan's Rule 52 motion, issues Findings of Fact and Conclusions of Law under Rule 52, and DENIES Cuevas's Rule 56 motion.[3]

## I. PLAN'S MOTION FOR JUDGMENT UNDER RULE 52

### A. Legal Standard

Federal Rule of Civil Procedure 52 provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). "In a Rule 52 motion, as opposed to a Rule 56 motion for summary judgment, the court does not determine whether there is an issue of material fact, but actually decides whether the plaintiff is [entitled to benefits] under the policy." *Prado v. Allied Domecq Spirits and Wine Group Disability Income Policy*, 800 F. Supp. 2d 1077, 1094 (N.D. Cal. 2011) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)). In making that determination, the court must "evaluate the persuasiveness of conflicting testimony and decide which is more likely true" in order to make findings of fact that will be subject to review under a clearly erroneous standard if appealed. *Kearney*, 175 F.3d at 1095.

### B. Findings of Fact[4]

Cuevas was hired as an officer with the Campbell Police Department in April 2008. *See* June 14, 2009 Mem., Administrative Record ("AR") 99, ECF 29. In 2009, he was the subject of

---

[2] For ease of reference, the Court hereafter refers to the February 18, 2016 proceeding as "the bench trial."

[3] The operative second amended complaint names two entities, Campbell Peace Officer Association's PORAC LDF Plan ("Plan") and Peace Officers Research Association of California Legal Defense Fund Trust ("Fund") as defendants. However, the parties' briefing treats the Plan and the Trust as a single entity and uses the terms "Plan" and "Fund" in the alternative. This order is intended as a final disposition of all of Cuevas's claims against both named defendants.

[4] Although Rule 52 empowers the Court to make findings of fact based upon controverted evidence, the facts underlying Cuevas's claim for Plan benefits are largely undisputed. The parties' dispute centers on the legal significance of those facts.

2

an internal investigation into his off-duty associations with Oscar Padilla and Joseph Aguilera, individuals believed to be gang members and drug dealers. *Id.* Cuevas was suspended for thirty-six hours without pay and he was given a direct order by Chief of Police Greg Finch to have no association with Padilla, Aguilera, or any other person involved in criminal or gang activity. Nov. 11, 2010 Mem., AR 176. Chief Finch also instructed Cuevas to report any contact with Padilla or Aguilera to command staff. *Id.*

In 2010, Cuevas was the subject of a second internal investigation. Nov. 11, 2010 Mem., AR 176. That investigation revealed that Cuevas was living with Aguilera's estranged wife, Antonia Lopez. *Id.* Aguilera and Lopez had separated, but investigators believed that Aguilera had visitation rights with respect to his child, who lived with Lopez. *Id.* Investigators determined that at times Aguilera's car and Cuevas's car were both parked at Cuevas's residence. *Id.*

### Cuevas's Termination

On December 10, 2010, the City of Campbell issued a Notice of Intended Disciplinary Action, informing Cuevas that the City intended to dismiss him based upon six violations of the City of Campbell Police Department Policy Manual. Notice of Intended Disciplinary Action, AR 182-83. The violations were: "Failure to notify Department of change of residence address"; "Dishonesty – Providing false and or misleading statements"; "Insubordination"; "Falsifying written documents"; "Active personal relationships with persons engaged in criminal Activity"; and "Conduct unbecoming a member of the Police Department." *Id.* On December 28, 2010, following a *Skelly*[5] hearing, the City of Campbell issued a Notice of Termination effective December 30, 2010. Notice of Termination, AR 186. The Notice of Termination responded to points Cuevas had raised in the *Skelly* hearing; stated that the six violations listed in the Notice of Intended Disciplinary Action were sustained; and concluded that those violations warranted termination, particularly since Cuevas had been advised after the 2009 discipline that future violations would result in significant discipline or termination. *Id.*

---

[5] *Skelly v. State Personnel Bd.*, 15 Cal. 3d 194 (1975), requires that employees of public agencies be granted an opportunity to respond to allegations prior to the imposition of disciplinary action.

Campbell POA's Application to Participate in Plan

In January 2011, after Cuevas's *Skelly* hearing and termination, the Campbell Police Officers Association ("Campbell POA") submitted an application to participate in the Plan. *See* Campbell POA Plan Applic., AR 236-38. That application was accepted effective February 1, 2011. *Id.* The Plan offers several different levels of coverage to its member associations. Plan at AR 20-22. Campbell POA chose Benefit Plan I, providing benefits in the following circumstances:

> (a) Legal representation in any civil or criminal action and representation by a Panel Attorney or Panel Field Representative in an administrative disciplinary action brought against him or her *arising from any act or omission of the Participant within the scope of his or her employment*, including civil, criminal or administrative disciplinary action brought as the result of the Participant's involvement in Concerted Labor Activity, subject to the conditions set forth in Section 8 of this Article.
>
> (b) Representation by a Panel Attorney or Panel Field Representative in any departmental administrative investigation or informal non-adversary pre-disciplinary hearing, e.g., a *Skelly* hearing, if the action *arose from an act or omission of the Participant not within the scope of his or her employment*.

Plan at AR 20 (emphasis added). Under these provisions, a participant whose alleged misconduct arose from an act or omission "not within the scope of his or her employment" is entitled to legal representation only with respect to administrative proceedings up to and through a *Skelly* hearing, while a participant whose alleged misconduct arose from an act or omission "within the scope of his or her employment" is entitled to legal representation for any civil or criminal action or administrative disciplinary action.

The Plan defines "Scope of Employment" as:

> generally defined as *actions or omissions* by a Peace Officer or Public Safety Employee *which are typical of or associated with the duties which a Peace Officer or Public Safety Employee is hired, trained, and paid to perform*, as determined by the Board of Trustees.

Plan at AR 13 (emphasis added).

The Plan requires the initial presentation of a claim to the Plan's Legal Administrator, who has authority to grant or deny coverage of the claim. Plan at AR 32-33. If the Legal Administrator denies the claim, the participant has the right to appeal that denial to the Board of

4

Trustees ("Board"), which administers the Plan. Plan at AR 5, 34. The Plan expressly confers upon the Board discretion to interpret the terms of the Plan and to grant or deny benefits. Plan at AR 35 (granting Board "full discretionary authority and power to interpret the terms of the . . . Plan Document," and "full discretionary authority to determine whether any claim for benefits is to be granted or denied").

<u>Request for Plan Benefits on Behalf of Cuevas</u>

Campbell POA's President, Gary Berg, requested that the Plan cover Cuevas even though he was terminated before the Plan's effective date. Email correspondence, AR 223-24. The Plan's Legal Administrator, Ed Fishman, informed Berg that the Board had agreed that Cuevas would be considered a covered participant under the Plan. *Id.* However, Fishman stated that "[b]ased on a review of the facts of this one case (Sammy Cuevas – Termination), I have determined that the allegations do NOT arise within the scope of employment, and the stage of the proceedings are now beyond the Skelly hearing." *Id.* Fishman informed Berg that as a result, Cuevas's matter would not be covered under the Plan unless Campbell POA purchased additional coverage for non-scope conduct at an additional cost. *Id.* Campbell POA declined to purchase the additional non-scope coverage. *See* Email correspondence, AR 273.

Berg wrote Cuevas a letter informing him that Campbell POA had joined the Plan and that the Plan had agreed to extend Cuevas coverage for incidents arising out of the course and scope of employment, but that the Plan had determined that Cuevas's matter "was not 'course and scope' and not eligible for coverage." Berg Letter, AR 196. The Plan's Legal Administrator, Fishman, did not directly notify Cuevas of the Plan's initial determination that his claim was not covered. Cuevas Decl. ¶¶ 3, 6, ECF 34. Moreover, neither Fishman nor Berg provided Cuevas with a copy of the Plan documents or informed him that there was a procedure for appealing the initial adverse claim decision to the Board. *Id.* ¶¶ 4-8.

<u>Cuevas's Appeal of his Termination to the Campbell City Council</u>

After being informed by Berg that the Plan would not provide him with legal representation, Cuevas retained his current counsel, Steve M. DeFilippis, to represent him with respect to his appeal of his termination to the Campbell City Council. Cuevas Decl. ¶ 8, ECF 34.

5

The City Council conducted an evidentiary hearing on various days between June 27, 2011 and July 12, 2011. Board Dec. at AR 46. The City Council upheld Cuevas's termination. *See Cuevas v. City of Campbell*, Case No. H039233, 2015 WL 9450905 (Dec. 23, 2015). Cuevas incurred attorneys' fees and costs in the amount of $43,688.35 during his appeal to the City Council. Invoice, AR 203-06.

### State Court Affirmance of Termination

The Santa Clara County Superior Court denied Cuevas's petition for writ of administrative mandamus, and the California Court of Appeal affirmed. *Id.* The Court of Appeal found that Cuevas's termination was "based on, among other things, his failure to comply with Chief Finch's explicit directive not to associate with Padilla or Aguilera, which implicated Policy 340.3.5(e), which prohibits 'refusal or deliberate failure to carry out or follow lawful directives.'" *Id.* at *5. The Court of Appeal concluded that the City's findings of disobedience and insubordination were supported by substantial evidence, as were the City's other findings of failure to notify the Department of a change of residence address, making false or misleading statements, and falsifying written documents. *Id.* at *9-10.

### Present Action

Cuevas filed the present action in the Santa Clara County Superior Court. The operative second amended complaint ("SAC") asserts two claims against the Plan under ERISA: (1) a claim under 29 U.S.C. § 1132(a)(1)(B), under which a claimant may sue to recover benefits due under the terms of an ERISA plan; and (2) a claim under 29 U.S.C. § 1133, which requires an ERISA plan to provide participants with adequate written notice of claim denial and a reasonable opportunity for a full and fair review of the denial. When Cuevas first asserted those claims, the Legal Administrator had made an adverse determination but Cuevas's claim had not been presented to the Board for review.

### Administrative Appeal of Claim Denial to the Board

After removal to this Court, the parties stipulated to a stay of the litigation so that Cuevas could appeal the Legal Administrator's adverse determination to the Board. Stipulation and Order to Stay Case, ECF 16. Cuevas submitted a written appeal to the Board dated February 10, 2015,

1   and the Board held a hearing on February 20, 2015. Appeal, AR 77-206; Hrg. Trans., AR 51-76.
2   On June 5, 2015, the Board issued a written decision denying Cuevas's claim on the ground that
3   his termination arose from acts or omissions outside the scope of employment as defined by the
4   Plan. Board Dec., AR 44-50. Under the Plan, the Board's decision constituted the final
5   determination of Cuevas's claim for Plan benefits. *See* Plan at AR 34.

Parties' Motions

Shortly after the Board issued its final decision on Cuevas's claim, this Court lifted the stipulated stay. *See* Order Lifting Stay and Setting Case Management Conference, ECF 19. Cuevas thereafter filed the pending motion for summary judgment under Rule 56 and the Plan filed the pending motion for judgment under Rule 52.

Cuevas's motion addresses only Claim 1, seeking recovery of $43,688.35 in attorneys' fees and costs that Cuevas incurred when he appealed his termination to the City Council. *See* Pl.'s Mot., ECF 25. It does not address Claim 2, which is brought under the provision of ERISA requiring adequate notice of claim denial and reasonable opportunity for full and fair review of the denial. *Id.* Cuevas's opposition to the Plan's motion expressly concedes Claim 2. Pl.'s Opp. at 22, ECF 33. Accordingly, the Plan is entitled to judgment on Claim 2, and only Claim 1 is at issue in the parties' motions.

**C.    Conclusions of Law**

**1.    Standard of Review – Applicable Law**

"When a plan does not confer discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan, a court must review the denial of benefits de novo." *Abatie v. Alta Health Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (internal quotation marks and citation omitted). "If de novo review applies . . . [t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Id.*

However, where an ERISA plan confers discretionary authority upon a plan administrator to determine eligibility for benefits, the administrator's decision to deny benefits is reviewed for abuse of discretion. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Nolan v. Heald College*, 551 F.3d 1148, 1153 (9th Cir. 2009). Under a straightforward application of the

abuse of discretion standard, "the plan administrator's decision can be upheld if it is grounded in *any* reasonable basis." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (internal quotation marks and citation omitted) (emphasis in original).

### a.  Effect of Procedural Irregularities

Application of the abuse of discretion standard ordinarily is not altered by a plan administrator's failure to comply with required procedures for giving notice, reporting, and claims processing. *Abatie*, 458 F.3d at 971. Only "[w]hen an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well," does the court review de novo the administrator's decision to deny benefits. *Id.* "[A] deferential standard of review is appropriate when a trustee *exercises* discretionary powers," but "decisions taken in wholesale violation of ERISA procedures do not fall within an administrator's discretionary authority." *Id.* at 971-72 (internal quotation marks and citation omitted) (emphasis in original).

Where procedural irregularities are not so egregious as to warrant de novo review, they nonetheless may reduce the deference afforded to the claim denial. "A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." *Abatie*, 458 F.3d at 972.

### b.  Effect of a Conflict of Interest

In addition to procedural irregularities, conflicts of interest on the part of the plan administrator may reduce the deference afforded to a claim denial. "Where a plan administrator operates under a conflict of interest . . . a court must weigh the conflict *as a factor* in determining whether there is an abuse of discretion." *Nolan*, 551 F.3d at 1153 (internal quotation marks and citation omitted) (emphasis in original). "[C]onsideration of the conflict can 'affect judicial review,' and a court is required to consider the conflict whenever it exists, and to temper the abuse of discretion standard with skepticism 'commensurate' with the conflict." *Id.* (quoting *Abatie*, 458 F.3d at 959, 965, 969).

"[I]n general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion, but may admit additional evidence on de

novo review." *Abatie*, 548 F.3d at 970. "The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." *Id.*

### 2. Standard of Review in this Case

#### a. Abuse of Discretion is Appropriate Standard

In the present case, the Plan clearly confers discretionary authority upon the plan administrator – the Board of Trustees – to determine eligibility for benefits. *See* Plan at AR 35 (granting Board "full discretionary authority and power to interpret the terms of the . . . Plan Document," and "full discretionary authority to determine whether any claim for benefits is to be granted or denied"). Cuevas nonetheless contends that de novo, rather than abuse of discretion, is the appropriate standard of review because (he argues) *Fishman's* initial denial of benefits is the relevant decision to be reviewed by this Court and *Fishman* does not have the discretionary authority sufficient to trigger abuse of discretion review. Cuevas's position is not persuasive. As discussed below, the Legal Administrator is not vested with final decision-making authority and this Court is not reviewing Fishman's interim decision.

The Plan clearly lays out a two-step process under which a claim is reviewed initially by the Legal Administrator, Fishman, after which a final decision is rendered by the Plan Administrator, the Board. Plan at AR 32-35. While only the initial level of review by Fishman had occurred when Cuevas filed this lawsuit, Cuevas stipulated to a stay of this litigation so that he could seek a final decision on his claim from the Board pursuant to the Plan terms. The Court approved the parties' stipulation and stayed the litigation for more than a year, from July 24, 2014 through August 3, 2015, when the Court lifted the stay following Cuevas's notification that the administrative claims process had been completed. *See* Stipulation and Order to Stay Case, ECF 16; Order Lifting Stay and Setting Case Management Conference, ECF 19. Having now obtained a final determination by the Board that is not to his liking, Cuevas argues that the Board's determination should be disregarded.

9

Cuevas's argument lacks merit for a number of reasons. First, he has waived any objection to consideration of the Board's decision. "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." *United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). Cuevas knowingly chose to stay the case "pending the Fund's final determination of the Plaintiff's claim through the Fund's administrative claims process." Stipulation and Order to Stay Case, ECF 16.

Second, had Cuevas not appealed the denial of his claim to the Board, this action may well have been dismissed for failure to exhaust administrative remedies. *See Diaz v. United Agr. Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995) ("Quite early in ERISA's history, we announced as the general rule governing ERISA claims that a claimant must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court.").

Third, Cuevas' counsel argued at the bench trial that he agreed to the stay because he was "between a rock and a hard place" given that the Plan had filed a motion to dismiss for failure to exhaust administrative remedies under the Plan. Counsel's argument supports the Court's finding of waiver, as it indicates that Cuevas's decision to stay the litigation and seek a final determination on his claim was deliberate and strategic. If the Court were to disregard the Board's determination as requested by Cuevas, the one-year stay of litigation and the parties' expenditure of resources in completing the administrative claims process would have been entirely pointless.

Finally, Cuevas's request that the Court disregard the Board's decision is inconsistent with his express abandonment of Claim 2, which asserts that the Plan did not give him adequate notice of the denial of his claim or a reasonable opportunity to seek full and fair review of the denial. Presumably, Cuevas concedes Claim 2 because he now has received a full review by the Board (including an evidentiary hearing at which he was represented by counsel) of the initial denial of his claim.

### b. Procedural Irregularities do not Warrant De Novo Review

Cuevas also argues that de novo review applies because of the procedural irregularities in the claims process. Cuevas submits his own declaration and the declaration of his attorney, Steve

DeFilippis, to show that he was informed of Fishman's initial denial of his claim by Campbell POA's President, Berg, rather than by Fishman or another Plan representative; that he was not given a copy of the Plan at that time; and that he was not informed that he could pursue an administrative appeal of the initial claim denial. Cuevas Decl. ¶¶ 3-8, ECF 34; DeFilippis Decl. ¶ 3, ECF 35.[6] The circumstances surrounding the initial denial of Cuevas's claim also are evidenced by Fishman's email to Berg regarding the denial of coverage for Cuevas's claim, and Berg's subsequent letter to Cuevas, both of which are in the administrative record. *See* Fishman email, AR 194; Berg letter, AR 196. Moreover, the Plan does not dispute Cuevas's account of the circumstances under which he was informed of his claim denial.

Those circumstances, while irregular, do not warrant de novo review. As noted above, procedural irregularities in claim processing may trigger de novo review, but only "[w]hen an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well." *Abatie*, 458 F.3d at 971. While the initial handling of Cuevas's claim did not comply with ERISA requirements, the record makes clear that the failure to follow ordinary claim procedures resulted from the unusual fact that Campbell POA was not actually participating in the Plan at the time Cuevas was fired. Campbell POA's application for plan membership, Berg's request that Cuevas be considered a covered participant under the Plan, Fishman's agreement to that request, and Fishman's denial of Cuevas's claim all occurred in roughly the same time frame. *See* Email correspondence, AR 221-25, 229-35.

There is no suggestion in the record that Fishman or any other Plan representative deliberately concealed the Plan's terms and procedures from Cuevas. *See Abatie*, 458 F.3d at 971 (circumstances so egregious as to alter the standard of review may exist where administrator kept

---

[6] The Plan's objections to these declarations on the grounds that they are outside the administrative record and do not contain relevant material are OVERRULED. The declarations are relevant to Cuevas's argument regarding the appropriate standard of review and may be considered for that purpose. However, the Plan's objection to Mr. DeFilippis's declaration is SUSTAINED on the ground that it is not based upon Mr. DeFilippis's personal knowledge but rather summarizes Berg's communications with Cuevas and speculates as to how Berg would testify.

policy details secret from employees, offered them no claims procedure, and failed to provide them with relevant plan information). In fact, Cuevas ultimately received a full evaluation of his claim by the Board, which exercised the discretionary authority conferred upon it by the Plan in denying his claim. *See* Board Dec., AR 44-50. Thus there is no evidence of the type of "wholesale and flagrant violations" of ERISA or "acts in utter disregard of the underlying purpose of the plan" that would warrant de novo review.

### c. Procedural Irregularities Warrant a Modest Reduction of Deference

Cuevas argues that even if the abuse of discretion standard applies, a reduction in the deference applied under that standard is warranted by the defects in the claims process. "A procedural irregularity, like a conflict of interest, is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." *Abatie*, 458 F.3d at 972. It is undisputed that there were significant procedural irregularities in this case. All record evidence suggests that those irregularities resulted from the unusual factual circumstances rather than from any intent on the part of Fishman or the Plan to conceal the claims procedures from Cuevas. Moreover, Cuevas has not articulated how the procedural irregularities prejudiced him. He contends that due to the passage of time, the Board had information regarding his appeal of his termination that would not have been available had his claim been processed in a timely manner. However, he points to no Plan language indicating that a participant's entitlement to benefits is affected by the outcome of the proceedings for which the participant seeks representation, and he fails to explain how information regarding his appeal of his termination affected the Board's decision. Nonetheless, the irregularities were so pervasive at the initial level of review that the Court concludes that a modest reduction in deference is appropriate even absent evidence of prejudice and even though Cuevas ultimately received a full and fair review of his claim by the Board.

### d. The Board did not Have a Conflict of Interest

Cuevas also argues that a reduction in the deference applied to the Board's decision is warranted because the Board had a conflict of interest when it denied his claim. Specifically, Cuevas argues that the appeal process before the Board was a "sham" because "the Board was

aware that a decision in favor of Plaintiff would create significant liability to them." Pl.'s Opp. at 2, ECF 33. However, Plan benefits are paid from a trust that is funded by employee contributions. *See* Plan, AR 14-16. Cuevas has not presented any evidence showing that benefits are paid from assets belonging to the Board, and the Plan asserts that in fact the Board has no role in funding the Plan. The members of the Board of Trustees are not compensated for their service on the Board. *See* Trust Agreement, AR 252. Members of the Board of Trustees themselves may be Plan participants and therefore, presumably, would have an interest in ensuring that covered claims are paid. *Id.* This record does not suggest a structural conflict or the type of "malice, self-dealing, or of parsimonious claims-granting history" that courts have found sufficient to warrant a reduction in the deference normally afforded to the Plan Administrator under an abuse of discretion standard. *See Abatie*, 458 F.3d at 968.

### 3. Review of Board's Denial of Claim

Having determined that the appropriate standard of review is abuse of discretion with a modest reduction in deference, the Court must apply that standard to the Board's denial of Cuevas's claim. As discussed above, under a straightforward application of the abuse of discretion standard, "the plan administrator's decision can be upheld if it is grounded in *any* reasonable basis." *Montour*, 588 F.3d at 629 (internal quotation marks and citation omitted) (emphasis in original). In the present case, the Court will uphold the Plan's decision if grounded in any reasonable basis, but will consider the Plan's proffered bases for its decision with a modest amount of skepticism.

#### a. Evidence Considered by the Court

When determining whether the Board abused its discretion, the Court's review is limited to the administrative record. *See Abatie*, 548 F.3d at 970. Although the administrative record contains excerpts of the transcript of the City Council hearing on his termination, Cuevas has submitted additional pages of that transcript not contained in the administrative record. The Plan objects to those additional pages. When questioned at the bench trial, Cuevas's counsel failed to explain the relevance of the additional pages and in fact conceded that all materials relevant to a determination on the merits of his claim are contained in the administrative record submitted by

13

the Plan. The Plan's objection is SUSTAINED.

At the bench trial, Cuevas's counsel objected to substantial portions of the administrative record. That record contains: (1) Plan documents, AR 1-43; (2) the Board's June 5, 2015 determination that Cuevas is not entitled to Plan benefits, AR 44-50; (3) the transcript of the February 20, 2015 hearing before the Board, AR 51-76; (4) Cuevas's brief (including exhibits) submitted to the Board on February 10, 2015, AR 77-206; (5) the December 10, 2010 Notice of Intended Disciplinary Action, AR 207-208; (6) the December 28, 2010 Notice of Termination, AR 209-210; (7) email and letter correspondence, AR 211-217; (8) a Stipulation on Disciplinary Appeal Hearing Procedures, AR 218-220; (9) email correspondence, AR 221-225; (10) a Stipulation on Disciplinary Appeal Hearing Procedures, AR 226-228; (11) email correspondence, AR 229-235; (12) the Campbell Police Officers Association's application for Plan membership, AR 236-239; (13) the Trust Agreement governing the Plan, AR 240-268; (14) email correspondence, AR 269-273; and (15) the Plan's Bylaws, AR 274-366.

Cuevas objects to admission of the Board's determination, the transcript of the Board hearing, and certain exhibits that he submitted to the Board with his brief (categories 2, 3, and 4 above) on the ground that the relevant claim denial to be reviewed is that of the Legal Administrator, Fishman. As discussed above, the Board's decision is the relevant one, and Cuevas has waived any objection to the Court's consideration of the Board's decision. Thus Cuevas's objections to the Board's decision and related documents are OVERRULED.

Cuevas also objects to the two Stipulations on Disciplinary Appeal Hearing Procedure, relating to Cuevas's appeal of his termination to the City Council, and to the Bylaws of the Peace Officers Research Association of California (categories 8, 10, and 15 above). With respect to the Stipulations, Cuevas's counsel failed to articulate grounds for the objection. However, the Stipulations are irrelevant to the question before the Court, which is whether the Board abused its discretion in denying Cuevas's claim. With respect to the Bylaws, the Plan's counsel stated at the bench trial that the Bylaws are not relevant to the Board's denial of Cuevas's claim and that the Plan would not object to their exclusion. Consequently, Cuevas's objections to the Stipulations and the Bylaws are SUSTAINED.

14

### b. Board's Decision was not an Abuse of Discretion

The Board's decision recites the Plan language providing coverage for civil and criminal actions, and administrative disciplinary actions, "arising from any act or omission of the Participant within the scope of his or her employment." Board Dec., AR 44 (quoting Plan). The decision also recites the Plan's definition of "scope of employment": "'Scope of Employment' is generally defined as actions or omissions by a Peace Officer . . . which are typical of or associated with the duties which a Peace Officer . . . is hired, trained, and paid to perform, as determined by the Board of Trustees." *Id.* at AR 45 (quoting Plan). The decision then correctly identifies the question before it to be "whether the conduct from which Mr. Cuevas's termination arose consisted of acts or omissions in the scope of his employment as that term is defined in the Plan." *Id.* at AR 47. The Board answered this question in the negative, concluding that "[t]he gravamen of the violations that Mr. Cuevas was found to have committed was his off-duty conduct, including his contacts with certain individuals." *Id.* at AR 48. The Board concluded that off-duty associations do not meet the definition of acts or omissions which are typical of or associated with the duties which a Peace Officer is hired, trained, and paid to perform. *Id.*

The Board acknowledged the following specific arguments that Cuevas raised in his appeal: (1) following the 2009 internal investigation, the scope of his employment was enlarged to include a duty to report contacts with Padilla and Aguilera to command staff, and he was fired in part for his on-duty failure to report those contacts; (2) because police officers' off-duty conduct is regulated, their off-duty conduct is within the scope of employment; (3) because he was found to have violated specific department policies, he was terminated based upon conduct that was within the scope of employment; and (4) he was found to be insubordinate, and insubordination is the failure to follow directives of a superior, which means that his actions were in the scope of employment. Board Dec. at AR 48. The Board concluded that the requirement to report contacts with Padilla and Aguilera was imposed as a form of discipline and as such was not "typical of or associated with the duties" that a peace officer "is hired, trained, and paid to perform." *Id.* at 48-49 (quoting Plan). The Board noted that Cuevas himself conceded that the reporting requirement was specific to him in particular and not a typical duty of police officers. *Id.* at 49. The Board

15

rejected Cuevas's other arguments for similar reasons, concluding that the fact that an officer's conduct constitutes a violation of department policy is insufficient to bring the conduct within the Plan's definition, which limits "scope of employment" to an officer's acts or omissions that are *typical of or associated with the duties that he is hired, trained, and paid to perform*. *Id.* at AR 49. The Board observed that "[i]f any conduct for which an officer may be disciplined is thereby conduct in the scope of his employment, then the provision distinguishing between scope and non-scope acts and omissions for coverage purposes would be rendered meaningless." *Id.*

The Board's decision sets forth reasonable bases for its denial of Cuevas's claim. While some of the conduct for which Cuevas was terminated arguably falls within the scope of *his* employment, the Board drew a reasonable distinction between *Cuevas's* job duties – some of which were imposed upon him as a disciplinary measure – and the "duties which a Peace Officer . . . is hired, trained, and paid to perform." Plan at AR 13. The Board's decision also offers a reasonable explanation for its conclusion that all conduct that violates Department policy cannot be conduct within the scope of employment. Even viewing the Board's reasoning with a modest degree of skepticism, the Court cannot conclude that the Board abused its discretion in interpreting the Plan as it did or in denying Cuevas's claim for benefits.

In arguing that he is entitled to benefits under the Plan, Cuevas relies upon California cases holding that an insurer has a duty to defend an action against its insured when there is a potential for policy coverage of even one of the claims asserted against the insured. *See, e.g., Buss v. Sup. Ct.*, 16 Cal. App. 4th 35, 58 (1997). The cited cases are inapplicable, because the Plan is not an insurance policy and state insurance law does not apply to it. *See* 29 U.S.C. § 1144(b)(2)(B) ("Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts."); *FMC Corp. v. Holliday*, 498 U.S. 52, 65 (1990) (construing § 1144(b)(2)(B) to exempt ERISA employee benefit plans from state insurance regulation).

Based upon the above findings of fact and conclusions of law, the Court GRANTS the Plan's motion for judgment under Rule 52 with respect to Claims 1 and 2.

## II. CUEVAS'S MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

### A. Legal Standard

Under traditional summary judgment principles, "[a] party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). However, "[t]raditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard." *Stephan v. Unum Life Ins. Co. of Amer.*, 697 F.3d 917, 929 (9th Cir. 2012). "Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Id.* at 930 (internal quotation marks and citation omitted).

"Consideration of a conflict of interest is, however, an exception to this feature of ERISA cases as the traditional rules of summary judgment do apply." *Id.* Under Rule 56, the Court's role is not to determine the existence and impact of an asserted conflict, but merely to determine whether there is a factual dispute regarding the existence and impact of an asserted conflict. *Id.* In determining whether there is such a factual dispute, the Court must draw all reasonable inferences in favor of the nonmoving party. *Id.*

As discussed above, Cuevas has not presented any evidence that the Board had a structural or other conflict that might have impacted his appeal. The record evidence indicates that the Board has no role in funding the Plan, the members of the Board of Trustees are not compensated for their service on the Board, and members of the Board of Trustees themselves may be Plan participants. *See* Plan at AR 14-16; Trust Agreement at AR 25  Drawing all inferences in favor of the nonmoving party, the Plan, the Court must assume for purposes of Cuevas's motion that the Board did not have a conflict. Applying a similar analysis to the procedural irregularities in the claim process, Cuevas has not presented any evidence that those irregularities prejudiced him. Drawing all inferences in favor of the nonmoving party, the Plan, the Court must assume that no such prejudice occurred. Thus, for purposes of Cuevas's Rule 56 motion, drawing all reasonable

inferences in favor of the Plan, the Court must assume a straightforward application of the abuse of discretion standard, untempered by any skepticism.

### B. Analysis

As discussed above, the Court has concluded that the Plan is entitled to judgment under an abuse of discretion standard tempered by a modest reduction of deference. That standard is *less* deferential than the straightforward application of the abuse of discretion standard that the Court must apply in analyzing Cuevas's Rule 56 motion. Clearly, Cuevas has failed to demonstrate an entitlement to summary judgment in his favor under a straightforward application of the abuse of discretion standard, under which the Plan's decision must be upheld if it is grounded in *any* reasonable basis. *See Montour*, 588 F.3d at 629. As set forth above, the Court concludes that the Plan's decision was properly grounded in reasonable bases.

### III. ORDER

For the reasons discussed above,

(1) the Plan's Rule 52 motion is GRANTED as to Claims 1 and 2; and

(2) Cuevas's Rule 56 motion is DENIED.

Dated: May 12, 2016

_____
BETH LABSON FREEMAN
United States District Judge